RICHARDSON *v.* RICHARDSON.

JOHN S. RICHARDSON v. JOHN S. RICHARDSON, JR.

(Filed 5 May, 1909.)

1. **Husband and Wife—Marriage—Adoption of Constitution—Vested Rights—Wife's Separate Property—Disposition By Will—Husband's Curtesy.**

    By marriage, before the adoption of the Constitution of 1868, the husband acquired no vested rights in the lands of his wife before a child was born capable of inheriting; and when the first child born of the marriage was after the adoption of the Constitution, which gives a married woman the power, among other things, of disposing, by will, of her property acquired before marriage (Article X, sec. 6), she may accordingly dispose of it by will and deprive him of his interest therein as tenant by the curtesy.

2. **Husband and Wife—Wife's Separate Property—Marital Interests—Vested Rights—Common Law—Statutory Change—Wills.**

    The common-law doctrine that the husband, upon the marriage, was seized in right of his wife of a freehold interest in her lands during their joint lives, and that as tenant by marital right he was entitled to the rents and profits of her estate, etc., was changed by the act of 1848 (now Revisal, sec. 2097) ; and thereafter no vested right of his therein could be impaired by giving effect to the provisions of the Constitution of 1868, Art. X, sec. 6, allowing her to absolutely dispose of her separate real property by will, free from any claim therein of her husband, as such.

3. **Husband and Wife—Wife's Separate Property—Lease—Privy Examination—Void Lease.**

    A written lease of land for a term of five years, made subsequent to the passage of the act of 1848 (now Revisal, sec. 2097), without the privy examination of the wife, is void as to the wife and passes no interest to the husband in the rents and profits thereof.

ACTION heard on case agreed by *Long, J.,* at October Term, 1908, of ANSON.

Plaintiff appealed.

*J. A. Lockhart* and *F. J. Cox* for plaintiff.
*Robinson & Caudle* for defendants.

WALKER, J.  This action was brought to recover the value of five bales of cotton which have been sold, the parties agreeing

that the proceeds shall be held to await the determination of this case. Judgment was entered for the defendants, and the plaintiff appealed.

The facts are that the plaintiff and Charlotte Leak were married in 1867, she being then seized of land in Anson County, known as the Brown Creek tract and containing 878 acres, which is described by its metes and bounds in the record. They had five children, the oldest of them having been born in November, 1868. In December, 1905, the said Charlotte Richardson and her husband leased the land, by a written agreement, for the term of five years, to R. J. Beverly, who agreed to deliver, as rent, five-bales of cotton, on the first day of November of each year during the term. Charlotte Richardson died in October, 1907, leaving a will, by which she devised and bequeathed all of her property and estate to persons other than the plaintiff. The lessee delivered to Charlotte Richardson, just before her death, 2,004 pounds of cotton, it being part of the rent for the year 1907, and after her death the lessee delivered the remainder of the cotton in full payment of the rent for that year.

The question presented for our consideration is whether the plaintiff, the husband of Charlotte Richardson, or the defendant, John S. Richardson, Jr., her executor, is entitled to receive the proceeds of the sale of the cotton.

The plaintiff contends that by virtue of the marriage and the ownership of the land by his wife he acquired a vested interest, as tenant by the curtesy initiate, in all crops grown upon the same, without regard to the fact that the first child of the marriage was born after the adoption of the Constitution of 1868, and that he is therefore entitled to the rent due by the terms of the lease; while the defendants assert title to the rent upon the ground that, by the Constitution of 1868, the land, with its rents and profits, became the separate property of the wife, the testatrix of the defendant Richardson, as the plaintiff's right or interest in the land as tenant by the curtesy was a contingent one until the birth of issue, which occurred after the adoption of the Constitution, and therefore there was no interference with any vested right of the plaintiff by the provision of that instrument that the property of the wife acquired before mar-

riage shall belong to her as her separate estate, with the power to dispose of it by will, and also by deed, with the written consent of her husband, as if she were unmarried. Constitution, Art. X, sec. 6. We must therefore determine what is the husband's interest in his wife's property by the rules of the common law, as modified by the Constitution, if, under the facts of this case, any change in those rights as they existed at common law has been wrought by that instrument.

Blackstone says: "There are four requisites necessary to make a tenancy by the curtesy: marriage, seizin of the wife, issue, and death of the wife." He is referring here, of course, to a tenancy by the curtesy consummate. In regard to the time when the husband first becomes vested with an interest or estate in his wife's land he says: "As soon, therefore, as any child is born, the father began to have a permanent interest in the lands; he became one of the *pares curtis,* did homage to the lord, and was called tenant by the curtesy *initiate;* and this estate, being once vested in him by the birth of the child, was not suffered to determine by the subsequent death or coming of age of the infant." 2 Blackstone, 127. This is in harmony with the former decisions of this Court. As is said in *Morris v. Morris,* 94 N. C., 617, "The husband, by the birth of issue, became tenant by the curtesy initiate to a separate estate, for his own life, in his wife's land, the usufruct or profit of which, during that period, was absolutely and exclusively his own property. This has not been questioned in this State since the decision in *Williams v. Lanier,* 44 N. C., 30, and others following that case: *Halford v. Tetherow,* 47 N. C., 393; *Childers v. Bumgarner,* 53 N. C., 297; *McGlennery v. Miller,* 90 N. C., 215; *Osborne v. Mull,* 91 N. C., 203." We see, therefore, that the husband's right to the usufruct, or rents and profits of the land, is contingent upon the birth of issue. It is a mere expectancy or possibility, and when this is the case the Legislature may deprive him of his expectant interest at any time before the event occurs, upon the happening of which it would become vested. We said, in *Anderson v. Wilkins,* 142 N. C., 158: "So long as the interest remains contingent only, the Legislature may act, for a bare expectancy or any estate depending for its existence

on the happening of an uncertain event is within its control, not being a vested right which is protected by constitutional guaranties. If this be so, the nature of estates and their enjoyment must, to a certain extent, and indirectly, be subject to legislative control and modification in order to promote the public welfare. Smith on Statutory and Const. Constr., 412. In this country estates in tail have very generally been turned into estates in fee simple by statutes, the validity of which is not disputed. *De-Mill v. Lockwood,* 3 Blatch., 56; *Lane v. Davis,* 2 N. C., 277; *Minge v. Gilmour, ib.,* 279." Judge Cooley, in his treatise on Constitutional Limitations (7th Ed.), at p. 513, puts the very case we now have under consideration, and thus states the law applicable to it: "At the common law, the husband, immediately on the marriage, succeeded to certain rights in the real and personal estate which the wife then possessed. These rights became vested rights at once, and any subsequent alteration in the law could not take them away. But other interests were merely in expectancy. He could have a right as tenant by the curtesy initiate in the wife's estates of inheritance the moment a child was born of the marriage, who might by possibility become heir to such estates. This right would be property, subject to conveyance and to be taken for debts, and must therefore be regarded as a vested right, no more subject to legislative interference than other expectant interests which have ceased to be mere contingencies and become fixed. But while this interest remains in expectancy merely—that is to say, until it becomes initiate—the Legislature must have full right to modify or even to abolish it. And the same rule will apply to the case of dower, though the difference in the requisites of the two estates is such that the inchoate right to dower does not become property or anything more than a mere expectancy at any time before it is consummated by the husband's death. In neither of these cases does the marriage alone give a vested right. It gives only a capacity to acquire a right. The same remark may be made regarding the husband's expectant interest in the after-acquired personalty of the wife; it is subject to any changes in the law made before his right becomes vested by the acquisition."

We are therefore of the opinion that the plaintiff acquired no right to the cotton as rent for the land of his wife by virtue of any estate in him as tenant by the curtesy initiate, because of the constitutional provision (Article X, section 6), by which it is declared that a married woman's real and personal property shall be and remain her sole and separate estate, and that she may devise and bequeath the same, thus depriving her husband of any interest therein. *Walker v. Long,* 109 N. C., 510; *Tiddy v. Graves,* 126 N. C., 620. As that article of the Constitution was a valid enactment, under the facts and circumstances of this case, the plaintiff has no interest, either as tenant by the curtesy initiate or consummate in rent which was reserved in the lease, his wife having bequeathed the same to other persons. *Tiddy v. Graves, supra.*

It is true that at common law the husband, upon the marriage, was seized in right of his wife of a freehold interest in her lands during their joint lives, and that either as tenant by marital right or as tenant by the curtesy initiate he was entitled to the rents and profits, and might lease or convey his estate, and it might be sold under execution against him. But radical changes in this respect were effected by the act of 1848 (Revisal, sec. 2097). Construing this act, in *Jones v. Coffey,* 109 N. C., 515, the Court said: "Whatever may be the rights of the husband in the wife's land after she may die intestate, the authorities concur in the view that the husband holds no estate during the life of the wife as tenant by the curtesy initiate which is subject to execution and which he can assert against the wife. He has the right of ingress and egress and marital occupancy, but can assume no dominion over her land, except as her properly constituted agent." In *Walker v. Long,* 109 N. C., 510, we find the following reference to the act: "By virtue of the act of 1848, and the further modification made by the Constitution of 1868, the tenancy by the curtesy initiate is stripped of its common-law attributes until there only remains the husband's bare right of occupancy with his wife, with the right of ingress and egress *(Manning v. Manning, supra)* and the right to the curtesy consummate contingent upon his surviving her. * * * The husband is still seized in law of the realty of his wife, shorn

of the right to take the rents and of the power to lease her lands. \* \* \* He has by the curtesy initiate a freehold interest, but not an estate in the property." It would seem that the more recent decision in *Taylor v. Taylor,* 112 N. C., 134, is a direct authority against the claim asserted by the plaintiff. In that case the Court, speaking by *Shepherd, C. J.,* says: "In all of these cases the actual *decision* (as distinguished from several expressions founded upon the common law) may, it is thought, be reconciled with the recent ruling of this Court in *Jones v. Coffey, supra,* that under the act the husband has no right which he can assert *against* the wife in her real property. This appears to be in accord with the early declaration of the Court that 'the sole object of the act was to provide for her a *home,* of which she could not be deprived, either by the husband or by his creditors.' Conceding that the cases may not be altogether harmonious, we must adopt the later decisions, and according to these the plaintiff is entitled to recover; for, admitting that a divorce *a mensa et thoro* cannot, as it is claimed, affect the property rights of the parties *(Taylor v. Taylor,* 93 N. C., 418), the defendant, as against the wife, had no property rights whatever, but simply a right of ingress and egress for the purpose of enjoying her society, and these he has forfeited during the coverture, or until a reconciliation, by his own misconduct. Taking the other view, however, and admitting that the husband had a right to the rents and possession of the land during coverture, we think that such rights must yield when they come in conflict with the paramount rights of the wife, as indicated by the act of 1848."

It appears in this case that there was a written lease, signed by the plaintiff and his wife, but there was no privy examination of the latter, as required by the act of 1848 (Revisal, sec. 2097), and also by the Revisal, sec. 2096. The lease was therefore void as to the wife, and passes no interest to the husband in the rents and profits of the land, if otherwise he would have acquired an interest.

Our conclusion is that there was no error in the judgment of the court.

Affirmed.