WALKER and BROWN, JJ., concurring; HOKE and ALLEN, JJ., dissenting.
On 6 April, 1908, the plaintiff, who owned 46 shares of stock in the Edenton Cotton Mills, delivered same to C. W. Rea, her husband, having indorsed on the certificate as follows:
For value received, I hereby sell, assign, and transfer unto C. W. Rea the shares of stock represented by the within certificate, and do hereby irrevocably constitute and appoint W. O. Elliott, secretary, attorney to transfer the said stock on the books of the within corporation, with full power of substitution in the premises. MARTHA C. REA.
April 6, 1908.
In the presence of C. W. Rea. *Page 428 
On 8 April, 1908, said C. W. Rea surrendered said certificate to said cotton mill and the same number of shares were issued to him. C. W. Rea died in 1909 and the certificate of stock which had been issued to him went into the hands of his administrator.
The plaintiff contends in this action that said assignment, delivery, and transfer of said stock by her was a nullity because of noncompliance with Revisal, 2107.
There is a broad distinction between conveyances and contracts. Revisal, 2107, applies only to contracts. Laws 1911, ch. 109, (531) provides: "Subject to the provisions of section 2107, Revisal 1905, every married woman shall be authorized to contract and deal so as to affect her real and personal property in the same manner and with the same effect as if she were unmarried; but no conveyance of her real estate shall be valid unless made with the written assent of her husband, provided by section 6, Article X of the Constitution, and a privy examination as to the execution of the same, taken and certified as required by law." This recognizes that section 2107 applies to contracts, and that the only restriction upon conveyances by her is that constitutional one requiring the "written assent" of her husband as to conveyances of realty and her privy examination in such case.
Revisal, 2107, is equally explicit. It comes under subhead 3, entitled "Contracts between husband and wife," and provides: "No contract between a husband and wife during coverture shall be valid to affect or charge any part of the real estate of the wife or the accruing income thereof, for longer time than three years next ensuing the making of such contracts, or to impair or charge the body or capital of the personal estate of the wife, or of the accruing income thereof, for longer time than three years next ensuing the making of such contracts, unless such contract shall be in writing, and be duly proved as is required for conveyances of land; and upon the examination of the wife separate and apart from her husband, as is now or may hereafter be required by law in the probate of deeds of femescovert, it shall appear to the satisfaction of such officer that the wife freely executed such contract, and freely consented thereto at the time of her separate examination, and that the same is not unreasonable or injurious to her. The certificate of the officer shall state his conclusions, and shall be conclusive of the facts therein stated. But the same may be impeached for fraud as other judgments may be."
An examination of section 2107 shows that it applies solely to contracts and not to conveyances; indeed, the word "contract" is used five times in that section. The object of the Legislature was clearly (532) to prevent the wife making any contract with her husband whereby she should incur a liability against her estate which in future *Page 429 
might prove a burden or charge upon it, or cause a change or impairment of her income or personalty. To that end not only a privy examination was required, but the certificate of a magistrate that the contract is not unreasonable or injurious to her. This provision does not attempt to apply to conveyances by her as to which the act of 1911 retains the constitutional restriction in regard to realty, that there must be the written assent of the husband and statutory privy examination. Had the act attempted to impose a further restriction upon the conveyance of married women of realty, such as the approval of a third person, it would be in conflict with the Constitution, which gives her the power to convey her realty, if she has "the written assent of her husband."
The majority of this Court has sustained the statutory requirement of a privy examination in conveyances of realty by married women, but solely upon the ground that it is not an additional restriction, but merely a regulation to ascertain whether the wife really executed the deed.
As to conveyances by the wife of her personalty, the Constitution gives her full power of jus disponendi, without any restriction whatever. Nor is there any statute whatever that in any way has attempted to restrict it. This matter has been fully considered and settled by this Court in a remarkably well-considered and able opinion by Mr. Justice Walker in Vannv. Edwards, 135 N.C. 661, which leaves nothing to be added. That case overruled Walton v. Bristol, 125 N.C. 419, so far as it could be construed to intimate a different conclusion. In Sydnor v. Boyd,119 N.C. 481, the wife attempted to assign her life insurance policy to her husband so as to make it payable to him at her death, and guaranteed "the validity and sufficiency of the foregoing assignment." This was an executory contract which would have changed or diminished the corpus of her estate at her death, and she would have incurred liability upon her guarantee. The Court held that this was a contract, and invalid because not made in compliance with The Code, 1835 (now Revisal, 2107).
If Revisal, 2107, had included conveyances, it would have been invalid as to the transfers by a married woman of her personality, because the Constitution gives her as to them the absolute jus (533)disponendi, as if feme sole, without any restriction whatever. It would have been invalid as to conveyances of realty, because requiring the assent of a third person over and above the "written assent" of her husband, which is the only requirement of the Constitution, and an addition to the privy examination required by statute, which has been held a mere regulation and not a restriction upon the right of the woman to convey. In this case the husband actually witnessed the *Page 430 
transfer in writing, which, under the authority of Jennings v. Hinton,126 N.C. 51, is a sufficient compliance with the requirement of the written assent of the husband to conveyance of realty.
In this case there does not appear to have been any consideration, and the assignment was not only a conveyance, but a gift. No magistrate could certify that a gift by a woman to her husband is for her benefit or does not diminish her estate. It would be a startling proposition that a married woman who by our Constitution has full control of her property, as if unmarried, cannot make a present to her husband if she sees fit. It is a matter of everyday occurrence. Whether she make her husband a gift of money, a dressing gown, or a pair of slippers, it would be astonishing if she could recover it from his administrator, or from him if there should be a divorce. Of course, if the conveyance or gift by her has been procured by fraud or duress, it can be impeached just as if made to any one else.
Summing up, the rights of married women in North Carolina as to conveyances and contracts are:
As to conveyances of personalty: There is no restriction whatever upon her right to dispose of her personalty as fully and freely as if she had remained unmarried, either in the Constitution or by any statute. Vann v.Edwards, 135 N.C. 661, cited with approval by Justice Connor in Ball v.Paquin, 140 N.C. 91.
As to conveyances of realty: The Constitution requires (534) only "the written assent" of the husband. The statute superadds only a regulation providing for a privy examination, which has been upheld on the ground that it is not an additional requirement, but merely a method of ascertaining if the deed is really her voluntary act.
As to contracts: Laws 1911, ch. 109, provides that a married woman is authorized to contract and to affect her real estate and personal property thereby in the same manner and to the same effect as if she were unmarried, excepting only contracts whereby she may incur liability to her husband, as to which the provisions of Revisal, 2107, are retained.
The conveyance of the stock by the wife was not restricted by the Constitution or any statute. If, reversing Vann v. Edwards, 135 N.C. 661, it were now held otherwise, the cotton mills could be held liable, and every bank, railroad company, and other corporation which has transferred stock in like cases to this. Wooten v. R. R., 128 N.C. 119. While the Legislature has seen fit to guard contracts whereby a wife may incur liability to her husband, it has not attempted to restrict her right of conveyance, still less to forbid gifts by her to her husband without the approval of a justice of the peace. *Page 431 
Upon the case agreed, judgment should have been entered in favor of the defendant.
Reversed.